**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 14-05349 |
| OHCMC-OSWEGO, LLC,[1] | ) Chapter 11 |
| | ) |
| Debtor. | ) Hon. Carol A. Doyle |
| | ) |
| | ) Hearing Date: March 13, 2014 at 10:00 a.m. |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on March 13, 2014 at 10:00 a.m., the undersigned shall appear before the Honorable Carol A. Doyle in Courtroom 742, or whomever may be sitting in her place and stead, at the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, 219 S. Dearborn Street, Chicago, Illinois and will then and there present the *Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) to Authorize the Debtor to (I) Retain Rally Capital Services, LLC to Provide a Chief Restructuring Officer for the Debtor, and (II) Designate Howard Samuels as Chief Restructuring Officer for the Debtor* a copy of which is attached hereto and herewith served upon you.

Dated: February 19, 2014              **OHCMC-OSWEGO, LLC**

                                      By:     /s/ Richard S. Lauter
                                             Its Proposed Counsel

                                      David C. Gustman
                                      Richard S. Lauter
                                      Devon J. Eggert
                                      FREEBORN & PETERS LLP
                                      311 South Wacker Drive, Suite 3000
                                      Chicago, Illinois 60606
                                      Telephone:  312-360-6000
                                      Facsimile:  312-360-6520

---

[1] The last four digits of the Debtor's federal tax identification number are 8084.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 14-05349 |
| OHCMC-OSWEGO, LLC,[1] | ) Chapter 11 |
| | ) |
| Debtor. | ) Hon. Carol A. Doyle |
| | ) |
| | ) Hearing Date: March 13, 2014 at 10:00 a.m. |

## CERTIFICATE OF SERVICE

I, Richard S. Lauter, an attorney, hereby certify that on February 19, 2014, I caused a true and correct copy of the foregoing *Notice of Motion* and *Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) to Authorize the Debtor to (I) Retain Rally Capital Services, LLC to Provide a Chief Restructuring Officer for the Debtor, and (II) Designate Howard Samuels as Chief Restructuring Officer for the Debtor*, to be filed with the Court and served upon the following parties by the manner listed.

/s/ Richard S. Lauter

**U.S. Mail Notice List**

BMO Harris Bank, N.A.
Chapman & Cutler LLP (Attn: Audley
& Lavarda), 111 West Monroe Street
Chicago, IL 60603

DCWGPC & B, Ltd.
c/o Kevin M. Gensler, Regd. Agent
111 East Jefferson Avenue
Naperville, IL 60540

Edward Reagan, Receiver
Safe Harbor Realty LLC
687 North Milwaukee Avenue
Chicago, IL 60642

Kendall County Treasurer
Attn: Jill Ferko
111 W. Fox Street, Room 114
Yorkville, IL 60560

---

[1] The last four digits of the Debtor's federal tax identification number are 8084.

Michael D. Steffes
9305 Ashley Road
Morris, IL 60450

Oliver-Hoffmann Corporation
c/o Camille O. Hoffmann, Regd Agent
7 S. 251 Olesen Drive
Naperville, IL 60540

PNC Bank, N.A.
Crowley & Lamb P.C. (Attn: Crowley
& Major), 221 N LaSalle, Ste 1550
Chicago, IL 60601

Prime Meridian Insurance Group, Ltd
c/o Edward J. Boltz
2700 International Drive
West Chicago, IL 60185

Schoppe Design Associates, Inc.
126 South Main Street
Oswego, IL 60543

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 14-05349 |
| OHCMC-OSWEGO, LLC,[1] ) | Chapter 11 |
| ) | |
| Debtor. ) | Hon. Carol A. Doyle |
| ) | |
| ) | Hearing Date: March 13, 2014 at 10:00 a.m. |

**MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) TO AUTHORIZE THE DEBTOR TO (I) RETAIN RALLY CAPITAL SERVICES, LLC TO PROVIDE A CHIEF RESTRUCTURING OFFICER, AND (II) DESIGNATE HOWARD SAMUELS AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTOR**

OHCMC-Oswego, LLC (the "*Debtor*"), debtor and debtor-in-possession in the above-captioned case, by its proposed counsel, moves (the "*Motion*") this Court, pursuant to 11 U.S.C. §§ 105(a) and 363(b), for entry of an order authorizing the Debtor to (i) retain Rally Capital Services, LLC ("*Rally*") to provide the Debtor a Chief Restructuring Officer ("*CRO*") and certain additional personnel; and (ii) designate Howard Samuels ("*Mr. Samuels*") as CRO for the Debtor effective retroactively to February 19, 2014. In support of the Motion, the Debtor states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue for this chapter 11 case and this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief requested in this Motion are sections 105(a) and 363(b) of title 11 of the United States Code (the "*Bankruptcy Code*").

---

[1] The last four digits of the Debtor's federal tax identification number are 8084.

## BACKGROUND

3. On February 19, 2014 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or creditors' committee has been appointed in the Debtor's chapter 11 bankruptcy case.

4. The Debtor is an Illinois limited liability company that was formed on July 12, 2005 to, *inter alia*, acquire, develop and sell a series of real estate developments. The Debtor is wholly owned by Oliver-Hoffman Corporation.[2] The Debtor's principal place of business is located at 3108 S. Rt. 59, Ste. 124-373, Naperville, IL 60564.

5. The Debtor was formed to acquire and improve vacant land in order to develop and sell a series of real estate developments. In connection with that business purpose, the Debtor owns various unimproved real property located in Kendall County, Illinois that are commonly known as:

(a) 139.621 acres of land north of Wooley Road, Oswego, Illinois;

(b) parcels of land located on the north side (20 acres) and south side (90 acres) of Wooley Road just west of Douglas Road, Oswego, Illinois; and

(c) a parcel west of Douglas Road, south of Wolf's Crossing and north and south of Wooley Road, Oswego, Illinois (collectively, the "*Properties*").

6. The Debtor's pre-petition lenders, BMO Harris Bank, N.A. ("*BMO*") and PNC Bank, N.A. ("*PNC*" and together with BMO, the "*Lenders*") have asserted liens on the Properties. BMO has asserted a lien on (i) the 139.621 acres of land north of Wooley Road, Oswego, Illinois; and (ii) the parcels of land located on the north side (20 acres) and south side (90 acres) of

---

[2] The Macom Corporation originally owned a 50% interest in the Debtor but assigned that interest to Oliver-Hoffman Corporation on April 11, 2008.

Wooley Road just west of Douglas Road, Oswego, Illinois (the "*BMO Properties*"). BMO asserts its liens pursuant to a Mortgage dated December 11, 2006 (the "*2006 BMO Mortgage*") and by a Mortgage dated June 13, 2007 (the "*2007 BMO Mortgage*") (collectively, the "*BMO Mortgages*").

7. PNC has asserted a lien on the parcel west of Douglas Road, south of Wolf's Crossing and north and south of Wooley Road, Oswego, Illinois (the "*PNC Property*"). PNC asserts its liens pursuant to a Mortgage, Security Agreement and Assignment of Leases and Rents (the "*PNC Mortgage*") filed with the Kendall County Recorder of Deeds on October 26, 2005.

8. Given the Debtor's inability to develop the properties and lack of other significant income relating to those properties, the Lenders filed actions against the Debtor to recover upon their debts and foreclose upon the Properties.

9. Prior to the Petition Date, the Debtor received an offer to purchase the Properties for what the Debtor believed to represent fair market value. The Debtor approached both BMO and PNC to explore whether the parties could work together to effectuate a sale of the Debtor's Properties. BMO has responded that it, too, has received offers for certain of the properties, but it has not disclosed the details of those offers and has otherwise not responded to the Debtor's efforts to work together on any sale efforts. The Debtor also approached PNC who responded to the purchase offer by initiating litigation seeking to foreclose on its secured interest in the PNC Property.

10. The Debtor has commenced this chapter 11 case in order to market the Properties for sale through either a section 363 sale or a plan of liquidation and otherwise utilize the "breathing room" afforded in chapter 11 in order to maximize the value of the Debtor's estate for the benefit of its creditors.

**RELIEF REQUESTED**

11. By this Motion, the Debtor requests entry of an order pursuant to sections 105(a) and 363(b) of the Bankruptcy Code authorizing the Debtor to (i) retain Rally to provide the Debtor a CRO and certain Additional Personnel (as described below); and (ii) designate Mr. Samuels as CRO for the Debtor, both effective retroactively to the Petition Date.

12. Mr. Samuels will serve as the CRO to assist the Debtor with its chapter 11 case as further described below. Rally will provide additional employees (the "*Additional Personnel*" together with the CRO the "*CRO Personnel*") as necessary to assist the CRO in the execution of the duties set forth more fully herein. In support of Rally's retention, the declaration of Howard Samuels (the "*Samuels Declaration*") is attached hereto as Exhibit A.

**I.   Rally is Well-Qualified to Assist the Debtor**

13. In consideration of the exigencies of the circumstances, the Debtor has determined that the services of an experienced restructuring manager will substantially enhance the Debtor's attempts to maximize the value of its bankruptcy estate. The CRO Personnel are well qualified to act on the Debtor's behalf given their extensive knowledge and expertise with respect to chapter 11 proceedings and asset liquidations.

14. Rally is a turnaround management consulting firm founded in 1995 to provide specialized debtor management and advisory services to distressed companies. Rally has also served as the court appointed receiver, consultant or REO advisor on several hundred real estate projects throughout the country. Rally also provides limited scope auditing, financial analysis/due diligence and collateral review for a variety of banks, other commercial lenders and investors. Rally has served as appointed financial advisors and chief restructuring officers in a number of bankruptcy cases.

15. Mr. Samuels started Rally in 1995 and continues to serve as its founding member. Mr. Samuels brings a wealth of knowledge and a broad range of experience, having worked as an

4

internal revenue agent and IRS Midwest Regional Division Appellate Conferee, attorney and tax law specialist and trusted strategic business advisor to operating businesses, commercial lenders and other business professionals. As a founding member of Rally, Mr. Samuels has worked on numerous financial restructuring and insolvency proceedings. This includes the successful implementation of creditor workouts involving millions of dollars of trade debt with over 3,500 creditors and claims ranging from small to multi-millions of dollars. He has served as chief restructuring officer, managing agent to debtors-in-possession, assignee/trustee in assignments for the benefit of creditors, court appointed receiver to operating businesses, liquidating agent and advisor to business owners, commercial lenders and other professionals advisors.

### SERVICES TO BE PROVIDED

16. Subject to this Court's approval, the Debtor proposes to retain Rally to provide Samuels as CRO and to provide the Additional Personnel to assist Mr. Samuels in the execution of his duties on the terms and conditions set forth in the engagement letter (the "*Engagement Letter*"), dated February 11, 2014, at true and correct copy of which is attached to the Samuels Declaration as Exhibit 1.

17. Among other things, the CRO Personnel will perform the following services:

(a) review and analyze the Debtor's current financial and collateral position as it relates to the Debtor's secured financing with the Lenders;

(b) facilitate the development and preparation of weekly or monthly cash flow budgets and other reporting and analyses that are intended for use in the continued operation, management and control of the Debtor's operations;

(c) review and facilitate the development of monthly pro forma cash flow and financial projections/budgets and other reporting and analyses that are intended for use in the continued operation, management and control of the Debtor's operations; and

(d) work on behalf of the Debtor as chief restructuring officer to assist in marketing and selling the Debtor's assets, in a reasonable fashion so as to maximize the sale value of the Debtor's assets.

## RALLY IS A DISINTERESTED PERSON

18. To the best of the Debtor's knowledge, information, and belief, other than as set forth in the Samuels Declaration, Rally: (i) has no connection with the Debtor, its creditors, other parties-in-interest, the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; and (ii) does not hold or represent any interest adverse to the Debtor's estate.

19. Although the Debtor does not believe that the retention of Rally is governed by section 327 of the Bankruptcy Code, the Samuels Declaration comports with the disclosure requirements contained in Rule 2014(a) of the Federal Rules of Bankruptcy Procedure and discloses, among other things, any relationship that Rally, Samuels, or any individual member of the CRO Personnel has with the Debtor, its significant creditors, or other significant parties in interest known to Rally. Based upon the Samuels Declaration, the Debtor believes that Rally is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

20. Additionally, as set forth in the Samuels Declaration, if any new material facts or relationships are discovered or arise, Rally will provide the Court with a supplemental declaration.

## THE TERMS OF RALLY'S RETENTION

21. In accordance with the terms of the Engagement Letter, Rally will be paid by the Debtor for the services of the CRO Personnel at their customary hourly billing rates. The current hourly billing rate for Samuels is $300. The hourly rates of the Additional Personnel expected to contribute significant time on this matter are as follows:

| | |
|---|---|
| Howard B. Samuels | $300.00 |
| David N. Missner | $300.00 |
| Vicki Jones | $195.00 |
| Gia Ormond | $195.00 |

Such rates shall be subject to adjustment annually at such time as Rally adjusts its rates generally. Rally will keep detailed records of the time spent performing services to the Debtor.

6

Such records will be kept in tenth of an hour increments; however, Rally does not intend to perform task based billing for this engagement.

22. In addition to compensation for professional services rendered by the CRO Personnel, Rally will seek reimbursement for reasonable and necessary expenses incurred in connection with this case, including but not limited to travel, lodging, computer research, and messenger and telephone charges. All fees and expenses due to Rally will be billed on a monthly basis as set forth in the Engagement Letter.

23. Rally has received an advanced payment retainer in the amount of $10,000 (the "*Retainer*") to be applied against anticipated professional services and expenses charged by Rally. The Retainer may be utilized in payment of any remaining fees and expenses accrued prior to the Petition Date, if any. The balance of the Retainer, if any, will be held to be applied against fees and expenses incurred after the Petition Date if not otherwise paid by the Debtor pursuant to the terms and conditions set forth herein.

**Fees and Reporting**

24. If the Court approves the relief requested herein, Rally will be retained to provide the Debtor with the CRO Personnel, and Samuels will be designated as the Debtor's CRO pursuant to section 363 of the Bankruptcy Code.

25. Because Rally is not being employed as a professional under section 327 of the Bankruptcy Code, Rally will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. The Debtor understands the Court, U.S. Trustee and other parties in interest have an interest in monitoring the compensation Rally receives in this case, however. Accordingly, the Debtor proposes to implement the following compensation guidelines:

    (a) Rally may be paid in the ordinary course so long as its fees and expenses for any calendar month do not exceed $25,000.

(b) If Rally's fees and expenses exceed $25,000 for any calendar month, then on or before the 20th day of the immediately following month, Rally shall file with the Court a copy of its invoice for the month in question (the "*Fee Statement*"). Such invoice shall include the hourly time records of Rally's professionals and itemized expenses.

(c) Any party that objects to the payment of the compensation set forth in a Fee Statement must file with the Court an objection (an "*Objection*") within ten days of the filing of the Fee Statement. Rally may be paid all fees and expenses set forth in the Fee Statement if an Objection is not timely filed with the Court. If an Objection is filed, Rally and the objecting party may seek to resolve any Objection without Court intervention. To the extent a resolution cannot be reached among the parties, Rally cannot be paid any portion of the fees or expenses at issue in the Objection absent further Order of the Court.

26. Given the number and complexity of the issues which the CRO Personnel may be required to address in the performance of their services, Rally's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature, the Debtor submits that the fee arrangement set forth in the Engagement Letter and the mechanism for payment described herein are reasonable under the circumstances.

**BASIS FOR RELIEF**

27. Section 363 of the Bankruptcy Code governs the Debtor's use of property of the estate. Section 363(b)(1) of the Bankruptcy Code provides that: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

28. Under applicable case law in this and other jurisdictions, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See e.g.*, *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from

8

the evidence presented before him at the hearing a good business reason to grant such application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

29. The retention of Rally and the CRO Personnel is a sound exercise of the Debtor's business judgment. Mr. Samuels has extensive experience as a managing agent to debtors-in-possession and as an advisor for many troubled companies. The Debtor believes that the CRO Personnel will provide services that benefit the Debtor's estate and creditors. In light of the foregoing, the Debtor believes that the retention of Rally is appropriate and in the best interests of the Debtor, the estate, and creditors.

30. The retention of interim corporate officers and other temporary employees is permitted by section 363 of the Bankruptcy Code. This Court has previously authorized retention of officers utilizing this provision of the Bankruptcy Code. *See In re Clare Oaks* (Bankr. N.D. Ill.), Case No. 11-48903, ECF No. 92 (Hollis, J.); *In re Fairview Ministries, Inc.* (Bankr. N.D. Ill.), Case No. 11-04386, ECF No. 154 (Sonderby, J.).

31. Based upon the foregoing, the Debtor submits that the retention of Rally, and the designation of Mr. Samuels as CRO on the terms set forth herein and in the Engagement Letter, is essential, appropriate, and in the best interests of the Debtor's estate, creditors, and other parties-in-interest.

WHEREFORE, the Debtor requests that this Court enter an order authorizing the Debtor to (i) retain Rally to provide the Debtor a CRO and certain Additional Personnel; (ii) designate Samuels as CRO for the Debtor, both effective retroactively to the Petition Date; and (iii) grant such further relief as is necessary or appropriate.

Dated: February 19, 2014 **OHCMC-OSWEGO, LLC**

By:\_\_\_/s/ Richard S. Lauter_____
 Its Proposed Counsel

David C. Gustman
Richard S. Lauter
Devon J. Eggert
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: 312-360-6000
Facsimile: 312-360-6520